JAMES LEO v. STATE OF NEBRASKA.

FILED FEBRUARY 6, 1902.   No. 12,378.

1. **Trial Judge:** EXAMINATION OF WITNESS:  ABUSE OF DISCRETION.
   While it is the right of a trial judge to interrogate witnesses
   when essential to the administration of justice, yet the prac-
   tice of so doing, except when absolutely necessary, should be
   discouraged.  The common-law rule conferring arbitrary power
   upon trial judges, has been so far modified by the Code as to
   greatly limit this power, and, in case of its abuse, a reviewing
   court would not hesitate to give a new trial to the injured
   party.  *Fager v. State*, 22 Nebr., 332.

2. ———: ———: ·———.  *Held*, As disclosed by the record, there was
   an abuse of discretion by the trial court in interrogating dif-
   ferent witnesses, during the trial of the cause, which was preju-
   dicial to the rights of the defendant.

3. **Misconduct of Prosecutor.**  While a police officer was on the wit-
   ness stand in behalf of the prosecution, the assistant prosecutor,
   after an objection to a question propounded to the witness,
   stated: "I want to show that he [the witness] has known him
   [the accused] a long time, and had him under observation for
   other jobs"; and also, on the cross-examination of the accused,
   who testified as a witness in his own behalf, asked him: "Have
   you ever been arrested before?"  "Have you ever been con-
   victed of a crime?"  "Isn't it a fact, Mr. Leo, that you have

served time in the penitentiary in the state of Nebraska?"
"Have you ever been convicted of a crime, and sent to the
state penitentiary at Lincoln as a punishment for that crime?"
"And you never at any time were convicted of a felony and
sent to the state penitentiary of the state of Nebraska at Lin-
coln?"—there being no competent evidence of any prior con-
viction of a felony. *Held,* Such action unwarranted, and preju-
dicial to the defendant's substantial rights, for which a new
trial should be granted.

ERROR from the district court for Douglas county.
Tried below before BAKER, J.  *Reversed.*

*Jefferis & Howell,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown,
Deputy,* for the state.

HOLCOMB, J.

A careful perusal of the record of the prosecution of the
plaintiff in error (defendant below) leads to the conclusion
that the judgment of conviction ought not to be permitted
to stand, and this altogether without regard to the merits
of the question of guilt or innocence of the accused. To
affirm the judgment does violence to well-settled and rec-
ognized rules of practice and procedure in criminal prose-
cutions, and establishes a precedent that would be in vio-
lation of our conception of the rights of every individual
charged with crime, and of safeguards thrown round him
in a prosecution for the commission of such crime. The de-
fendant is charged with robbery from the person, by put-
ting in fear and intimidating the person robbed. The of-
fense for which he is prosecuted, is commonly called a
"hold-up"; that is, by threats and the use of deadly weap-
ons money was charged to have been taken from the cash
drawer of a saloon in Omaha from and in the presence of
the proprietor. Two others, patrons of the saloon, were
also in the room at the time of the robbery. The defense
interposed was an alibi. No person identified the accused,
save the prosecuting witness, the proprietor of the saloon

to whom the accused was a stranger prior to the transaction, but who, after the arrest, was identified by the witness as one of three parties engaged in the robbery. The two other witnesses present were unable to identify him as one of the actors. Otherwise, the evidence was circumstantial. The accused took the witness stand in his own behalf, denied that he was at the place where the crime occurred, and testified, with others, that he was at a hotel in South Omaha, some three or four miles distant.

Strenuous complaint is made because of the manner in which the prosecution at the trial was carried on; it being argued and assigned as error that the trial court abused its discretion in interrogating the different witnesses during the trial of the cause, and that the assistant prosecuting attorney was guilty of irregularities and misconduct prejudicial to the rights of the defendant, and for the purpose of unduly influencing the jury against him, by asking the accused, while a witness in his own behalf, incompetent and prejudicial questions. It is to these two assignments of error that we address ourselves.

In a bill of exceptions containing the evidence and covering some 140 pages, on over thirty pages it is disclosed that the examination of the different witnesses by counsel for the state and defendant was interrupted by the trial court for the purpose of permitting the court to interrogate the witness regarding the matter under investigation. At different times the questions thus asked the witnesses by the court were objected to by defendant's counsel, and, it being apparent that the questions were improper, the court sustained the objections to its own questions. Other objections were made by defendant's counsel and overruled. The questions in many instances were entirely proper, and served only the purpose of bringing out the truth and conducing to a clearer understanding of the testimony of the witness. Their tendency, in the main, was not violative of any of the proprieties which should obtain; was not calculated to prejudice the defendant or do other than bring about a proper administration of justice. The great

number of questions thus asked the different witnesses by
the court we regard as in itself immaterial if the questions
were of such character to make them appear to be essen-
tial to the administration of justice, and disclosed no lean-
ing on the part of the presiding judge, either in favor of or
against the defendant.   We see no impropriety in a trial
court interrogating witnesses regarding a fact under in-
vestigation, when the tendency is only to develop  the
truth, and is calculated in nowise to influence the jury,
save as the testimony will assist them to arrive at a cor-
rect conclusion on the questions of fact in issue.   Where,
however, the questions are of such character as to induce
in the minds of the jury a belief that the court is of the
opinion the accused is guilty, and the questions are pro-
pounded for the purpose of fastening guilt on him, such
procedure would be clearly prejudicial to the substantial
rights of the defendant, and require a reversal of a judg-
ment of conviction, if it should follow.   In some few in-
stances in the record before us the questions asked by the
court are far more appropriate as coming from a public
prosecutor and had, we are satisfied, an unfavorable in-
fluence with the jury against the accused.   The discretion
resting with the trial court to interrogate witnesses, was
carried to its full limit and beyond, and its abuse of such
discretion was evidently prejudicial to the rights of the
defendant, rendering it impossible to say that his guilt
has been established fairly, and by a jury uninfluenced by
any consideration save the force of the legitimate evidence
in the cause presented to them for their consideration.
The subject in hand has been heretofore considered by this
court in *Fager v. State*, 22 Nebr., 332, where it is held:
"While it is the right of a trial judge to interrogate wit-
nesses when essential to the administration of justice, yet
the practice of so doing, except when absolutely necessary,
should be discouraged.   The common law rule conferring
arbitrary power upon trial judges has been so far modified
by the Code as to greatly limit this power, and in case of
its abuse, a reviewing court would not hesitate to give a

new trial to the injured party." Says MAXWELL, C. J., in a concurring opinion (page 341): "In my view our statute has changed the common law so far as to practically prohibit the presiding judge from examining the witnesses in whole or in part in a criminal case. A trial can not be fair and impartial if the judge is permitted, either directly or indirectly, to express an opinion upon the facts. His opinion necessarily would have great weight with the jury, and as he is not permitted directly to give his views upon the facts he should not be permitted to do so indirectly, either by his conduct or the form of questions to witnesses. It may be said that in some cases it would be impossible to convict a party, unless the judge should bring his influence to bear upon the jury. Such an argument, instead of being in favor of the practice, is directly opposed to it. Ordinarily, if the facts will justify the jury in finding a verdict of guilty, the probabilities are that they will do so. If the testimony leaves the guilt of the accused in doubt he is entitled to the benefit of that doubt, and no influence outside of the testimony should be brought to bear upon the jury to induce them to overcome such doubt. Otherwise, the accused will be deprived of a constitutional guaranty—a fair trial, and perhaps be unjustly convicted."

While the opinion expressed by the then chief justice is perhaps stronger than is warranted by any sound principle of law or rule of practice, or necessary for the proper administration of justice, yet it but emphasizes the wisdom and necessity of an abundance of caution on the part of every trial judge to refrain from any participation in the trial of a criminal case which could be construed as an expression of opinion by the court, and thereby unduly and unfavorably influencing a jury as triers of the facts involved in the controversy.

The conduct of the assistant prosecuting attorney in the trial of the case does not appear to be in conformity with law. The result of the acts complained of was prejudicial to the defendant, and denied him the fair and unbiased

consideration of the legitimate evidence by the jury to which he was entitled. The prosecution appears to have been conducted on the theory that the accused was a hard character, which fact should be considered by the jury in determining his guilt of the crime charged. A police officer was on the witness stand, and was asked by the prosecution how long he had known the accused. The question was objected to. It was then stated by the prosecutor: "I want to show that he [the witness] has known him [the accused] a long time and had him under observation for other jobs." Objections and exceptions were taken to the statement, and the jury advised by the court to disregard the remarks by the prosecuting attorney as to what he wanted to prove. While a reasonable effort was made by the court to cure the error, we are not sure its evil effect was entirely neutralized. The poisoned shaft had sped its way, and it is difficult to conceive how the jury could thereafter have been oblivious of or ignored the fact that the accused was a suspicious character, and under police surveillance, because believed to be engaged in the perpetration of "other jobs," or, in other words, in the commission of different crimes which are constantly occurring in metropolitan cities where the vicious and criminally inclined are wont to congregate. The statement, without reproof from the court, was highly prejudicial, and most damaging to the character of the defendant, and its insidious influences were set in motion in a way wholly unauthorized. A mere statement to disregard the remark probably fell short of effecting the desired object. The statement of what the state wanted to show was, in effect, an offer to prove the fact stated, with the means of doing so in the person of the police officer then on the witness stand, and in the presence of the jury. Can there be any serious doubt in the mind of any that, with the scene before the jury as then enacted, the statement carried conviction as to the truth of the fact offered to be proved? And probably it was true, but whether true or not it could have no legitimate bearing on the question of the guilt of the defendant of the offense

then being investigated. It rationally follows that for the remainder of the trial the minds of the jury were poisoned regarding the defendant. There was ever before them and held up to their view the suggestion that the accused was a police suspect, guilty of various crimes, and for that reason it was more probable that he was guilty of the one charged. In *Krum v. State,* 19 Nebr., 728, regarding a like question, it is pertinently observed by MAXWELL, C. J.: "In *St. Louis v. State,* 8 Nebr., 405, 411, where an improper question was asked and excluded, this court refused to reverse the case for that cause alone. A different rule, however, may obtain where there is an offer of evidence which is clearly incompetent, as that the defendant has committed a crime other than that with which he is charged. The effect of such an offer can not fail to be prejudicial to the accused on the minds of the jury, and nothing that the court can say will entirely obliterate the effect. Cases are to be tried upon the evidence, and the guilt of the accused determined from that alone, and no prosecuting officer should be permitted to supply its place with prejudice." *Leahy v. State,* 31 Nebr., 566, was a prosecution where the accused was a witness in his own behalf, and was asked in cross-examination if he had not been guilty of attempting to commit a similar crime soon after the time of the one he was being tried for, the prosecuting officer, when objection was made, stating that it was intended to follow the matter up, and show that such was the case. The witness had been summoned, by which it was expected to prove such fact, and in explanation it was said on behalf of the state that, in the opinion of the prosecutor, he had the right to show such fact. It was held that the conduct of the prosecutor was unwarranted and prejudicial to the accused. In a civil case (*Chicago, B. & Q. R. Co. v. Kellogg,* 55 Nebr., 748), after discussing the subject as affecting the trial of civil cases, it is said by the present chief justice: "We do not, however, wish to be understood as holding that a rebuke from the court, or even a complete retraction by the offending counsel, is in

all cases of this kind a sovereign remedy. If the transgres-
sion be flagrant—if the offensive remark has stricken deep,
and is of such a character that neither rebuke nor retrac-
tion can entirely destroy its sinister influence—a new
trial should be promptly awarded, regardless of the want
of an objection and exception,"—citing *Florence Cotton
& Iron Co. v. Field,* 16 So. Rep. [Ala.], 538; *Bullard v.
Boston & M. R.,* 64 N. H., 27, 10 Am. St. Rep., 367, 27 Am.
& Eng. R. Cases, 119; *Cleveland Paper Co. v. Banks,* 14
Nebr., 20; *Ashland Live Stock Co. v. May,* 51 Nebr., 474;
*Tucker v. Henniker,* 41 N. H., 317; *Martin v. State,* 63
Miss., 505; *Rudolph v. Landwerlen,* 92 Ind., 34.

Were the statements we have been considering the only
act in the nature of misconduct on the part of the assistant
prosecutor, regarding which merited criticism can be
urged, we would hesitate before holding the act so preju-
dicially erroneous, in view of the court's direction to the
jury to disregard it, as to, on that ground alone, call for a
reversal of the judgment. This statement, made while a
police officer was on the stand as a witness on behalf of
the state, appears to be but the beginning of an effort, prob-
ably unintentional, to unduly influence the jury in an un-
authorized way. In the cross-examination of the accused
while a witness for himself, several questions were asked,
of a series for the most part improper and incompetent,
and well calculated to lead the jury astray, and to deny
to the accused the same treatment as a witness, as that
accorded to all other witnesses. In several questions pro-
pounded in cross-examination the accused was asked:
"Have you ever been arrested before?" "Have you ever
been convicted of a crime?" "Isn't it a fact, Mr. Leo, that
you have served time in the penitentiary in the state of
Nebraska?" "Have you ever been convicted of a crime and
sent to the state penitentiary at Lincoln as a punishment
for that crime?" "And you never at any time were con-
victed of a felony, and sent to the state penitentiary of the
state of Nebraska, at Lincoln?" Some of these questions
were answered in the negative and some, on the objections

of defendant's counsel, were unanswered.   It does not appear, nor have we any reason to believe, that the defendant had ever before been convicted of a felony, or that the questions were asked under the provisions of section 338 of the Code, providing that a witness may be interrogated as to his previous conviction of a felony for the purpose of affecting the credibility of such witness.   We are warranted in assuming this, because the prosecution offered no competent evidence of that fact.   The records showing such conviction must have been accessible to the state, and, when not produced, we can only infer that no such record was in existence; and, if that be true, then an unfair advantage was taken of the accused by an effort, ostensibly for the purpose of laying the foundation for the introduction of the record of conviction, to ask many incompetent, improper and prejudicial questions which could have no other object than to unduly influence the jury to defendant's prejudice.   The section referred to provides: "A witness may be interrogated as to his previous conviction of a felony.   But no other proof of such conviction is competent except the record thereof."   The scope and effect of this section is to allow the witness to be interrogated as to whether he has before been convicted of a felony, calling his attention thereto, so that he may make admission thereof, or the introduction of the record of such conviction in evidence.   *Young Men's Christian Association v. Rawlings,* 60 Nebr., 377.   It is not contemplated by the statute that an accused, when a witness in his own behalf, should be treated differently from other witnesses, or that the statute should be used as a cover to ask incompetent or improper questions, calculated to prejudice the accused before the jury by whom he is being tried.   The questions, in the way in which they were put to the defendant, can hardly be regarded as for any other purpose than to engender in the minds of a jury the belief that the accused was addicted to criminal acts, and had been guilty of other independent and distinct offenses than the one for which he was being tried.   This could serve no lawful purpose in

establishing his guilt of the crime charged, and must, we
think, be regarded so unwarranted as to amount to pre-
judicial error.  In *Elliott v. State,* 34 Nebr., 48, it is said:
"Such cross-examination is highly improper and can not
fail to be prejudicial.  A prosecuting officer, in his zeal to
enforce the law must not forget that he also occupies a
semi-judicial position, and that his duty requires him to
resort to no questionable or improper means to secure a
conviction.  * * *  The questions quoted and others of
like kind must have been prejudicial to the accused.  Where
a defendant in a criminal case offers himself as a witness
on his own behalf, he is subject to the same rules of cross-
examination as other witnesses, and it is the duty of the
court to keep the cross-examination within the law." And
in *Marion v. State,* 16 Nebr., 349, it is held: "When in a
prosecution for murder the defendant on his trial becomes
a witness in his own behalf, it is incompetent on cross-ex-
amination, for the purpose of affecting his credibility as a
witness, to ask him if he had not pleaded guilty to a peni-
tentiary offense in another state; the entering of a plea of
guilty without judgment or sentence not being a conviction
within the meaning of section 338 of the Civil Code of
Nebraska."  In the opinion is found a discussion of the
meaning of the words "conviction of a felony."  Says the
supreme court of California:  "Equally with the court, the
district attorney, as the representative of law and justice,
should be fair and impartial.  He should remember that it
is not his sole duty to convict, and that to use his official
position to obtain a verdict by illegitimate and unfair
means is to bring his office and the courts into distrust."
*People v. Lee Chuck,* 78 Cal., 317, 329.  In *People v. Wells,*
34 Pac. Rep. [Cal.], 1078, the subject is exhaustively
discussed, and many authorities cited and quoted from,
establishing the rule that, when an unfair advantage
is gained over an accused by improper methods of
practice while conducting the prosecution, it will be
deemed prejudicial, and a new trial granted.  At the close
of the opinion it is said:  "Therefore the credibility of ap-

pellant was a most important matter in the case, and whatever tended to impair that credibility was material in the highest degree; and that the conduct of the prosecuting attorney so tended is entirely clear. It is too much the habit of prosecuting officers to assume beforehand that a defendant is guilty, and then expect to have the established rules of evidence twisted, and all the features of a fair trial distorted, in order to secure a conviction. If a defendant can not be fairly convicted, he should not be convicted at all; and to hold otherwise would be to provide ways and means for the conviction of the innocent." See also *People v. Cahoon*, 50 N. W. Rep. [Mich.], 384.

The series of questions asked the accused in the case at bar, and statements made by the assistant prosecutor, to which we have adverted, were a departure from legal methods which should obtain in the prosecution of those charged with the commission of felonies, and prejudicial to his rights, preventing a fair and impartial trial, such as he is lawfully entitled to; and because of which and for the reasons first stated, the judgment must be reversed and the cause remanded for further proceedings.

. REVERSED AND REMANDED.

NOTE.—The case of *Krum v. State*, 19 Nebr., 728, 730, cited in the foregoing, contains a tender of proof by the district attorney, who was also of counsel in the supreme court. Judge MAXWELL'S comment cited in the foregoing opinion was upon that tender of proof. The tender of proof is found on pages 729 and 730 of the nineteenth volume of the Nebraska Reports. The purpose of that tender of proof, was to prove an escape or flight from justice as a circumstance tending to prove guilt. Escape, disguise and similar acts afford, in connection with other proof, the basis from which guilt may be inferred. Wharton, Criminal Evidence, pars. 714, 750; *State v. Williams*, 54 Mo., 170; *Fanning v. State*, 14 Mo., 386. The case of *Krum v. State*, *supra*, was reversed because the word "any" appeared in place of "all" in an instruction. This was probably a mistake in copying due to illegible chirography.—REPORTER.