MICHAEL J. FLANNIGAN V. STATE OF NEBRASKA.

FILED SEPTEMBER 21, 1934.    No. 29089.

*William Ritchie, Jr., George A. Farman, Jr.,* and *Michael J. Flannigan, Jr.,* for plaintiff in error.

*Paul F. Good, Attorney General,* and *William C. Ramsey, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LIVINGSTON, District Judge.

LIVINGSTON, District Judge.

This is a proceeding in error from the conviction of plaintiff in error, Michael J. Flannigan, on an information charging forgery, upon a trial in the district court for Brown county, at the conclusion of which he was sentenced to the state penitentiary for a term of not less than three nor more than five years and fined $100 and required to pay the costs. For convenience the plaintiff in error will be referred to as the defendant.

The charge of forgery in the information was based upon a certain promissory note for $3,000, dated August 15, 1930, due on demand and payable to and held by the Nebraska State Bank of Long Pine, Nebraska, as an asset. The state contended that the name "A. E. Ranbaugh," which appeared as maker, was a fictitious person and that the name was signed to said note by the defendant. The defendant was arraigned on the 27th day of November, 1933, trial was begun November 27, 1933, and verdict of guilty returned November 30, 1933. Motion for new trial and motion for judgment notwithstanding verdict were duly filed, presented and overruled by the court and sentence pronounced by the court, December 20, 1933, whereupon proceedings in error were taken to this court.

On May 23, 1931, the Nebraska State Bank of Long Pine was closed and taken over by the state banking department and the note in question listed as one of the assets of the bank.

The defendant testified that he first met Ranbaugh at a public sale on February 20, 1930, which sale was held at a place 30 or 35 miles south of Ainsworth and Long Pine. He could not remember who introduced them. The next meeting with Ranbaugh was at the bank at Long Pine, August 15, 1930. The defendant testified that he immediately identified this man as Ranbaugh, whom he had met at the sale in February previous. After a brief conversation defendant connected this individual with the Rambaughs who were supposed to be substantial people in that community. Ranbaugh then told the defendant that he had leased a ranch north of Duff onto which he was moving and he wanted a loan of $2,500 or $3,000. Immediately the defendant granted a loan of $3,000, taking the note in question with a chattel mortgage written on the back, signed A. E. Ranbaugh, without investigating the security, paying Ranbaugh the cash. No one was in the bank while the transaction took place nor is the defendant corroborated in any particular. The chattel mortgage, or a copy thereof, was never filed. The defendant

never made any demand for payment, nor did he make any investigation at Duff or elsewhere about the maker of the note until some time after the bank closed. He at no time sought to investigate the security although the bank closed about nine months later.

The state introduced as witnesses the county clerk of Rock county and other officers of said county, including the postmaster at Duff and other citizens of that community, all of long residence in that county and enjoying a very wide acquaintance, all of whom testified that they never knew any such person as A. E. Ranbaugh or Rambaugh. This testimony is in no manner contradicted. The state also produced an expert witness on handwriting who examined the maker's signature on the note in. question and writing of the defendant, admitted to be genuine, and, after giving his reasons at length, testified that in his opinion the name of the maker, A. E. Ranbaugh, on the note in question was written by the defendant. The defendant produced some witnesses who had some experience in examining handwriting but did not qualify as experts, who gave the opinion that the defendant had not written the maker's signature on the note.

There are numerous assignments of error made by defendant. However, but four are considered entitled to consideration. These are: (1) The use of the word "counterfeit," in describing the crime in the information; (2) alleged abuse of discretion in denying a continuance; (3) there is a fatal variance between the information and the evidence adduced by the state and upon which the conviction rests; and (4) instruction No. 11 given by the court on evidence relating to the good character of the defendant was erroneous and prejudicial.

The information follows the language of the statute which uses the word "counterfeit" in describing the crime of forgery. Comp. St. 1929, sec. 28-601. See *Rownd v. State,* 93 Neb. 427; *Cooper v. State,* 123 Neb. 605; *State v. Leekins,* 81 Neb. 280; Comp. St. 1929, sec. 29-110. The

information charged the crime of forgery and the crime charged does not bar in three years.

No error was committed by the denial of the continuance. *McDermott v. Manley*, 65 Neb. 194; *Home Fire Ins. Co. v. Johnson*, 43 Neb. 71.

There was no fatal variance between the information charging forgery and the note alleged to have been forged. Comp. St. 1929, secs. 29-1501, 29-1502, 29-1503; *Marshall v. State*, 116 Neb. 45; *Goldsberry v. State*, 66 Neb. 312; *Bunge v. State*, 87 Neb. 557. This is especially true where the defendant testified to the alleged transaction in which the note was by him declared to have been executed and he recognized the instrument.

The court's instruction No. 11 on good character is in proper form and has been on several occasions approved. *Garrison v. People*, 6 Neb. 274; *McCormick v. State*, 66 Neb. 337; *Sweet v. State*, 75 Neb. 263; *Lillie v. State*, 72 Neb. 228.

Complaint is made that the court erred in overruling the challenge to juror Lammers, who disclosed in his *voir dire* examination that his wife and brother were depositors in the Flannigan bank, on the ground that the juror was related within the fifth degree, within the fourth subdivision of section 29-2006, Comp. St. 1929. This cause for challenge has no application in the case at bar. The parties to the case at bar are the state of Nebraska on the one hand and Michael J. Flannigan on the other, and no such relationship can be said to exist between the said juror and either of the parties to this cause.

The record conclusively shows that the defendant had a fair trial and all of his rights fully protected and there is ample evidence to sustain the conviction.

It therefore follows that the judgment of the lower court is

AFFIRMED.