ARTHUR BALIS V. STATE OF NEBRASKA.
291 N. W. 477

FILED APRIL 5, 1940.   No. 30763.

*I. D. Beynon,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Don Kelley, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

CARTER, J.

Plaintiff in error was convicted in the district court for Lancaster county of the crime of forgery, and sentenced to serve eight years in the penitentiary.

The record shows that plaintiff in error, a practicing lawyer in Lincoln, Nebraska, became acquainted with and performed legal services for three inmates of the penitentiary, Ray O'Neil, Monroe Seiner and Blanchard Beemer. Shortly after his release from the penitentiary, Beemer broke into the branch office of E. W. Biggs & Co., at Fremont, Nebraska, and stole three books of blank drafts. It also appears from the testimony of plaintiff in error that O'Neil and one King called on him and informed him that they were going into the hide and fur business in a big way and that they were looking around for a place to live. Plaintiff in error sold them a house that he owned, taking $129.60 from the sale of some hides and furs, which they had with them, as a first instalment on the purchase price. O'Neil also was indebted to plaintiff in error in the amount of $440.05 for legal services.

On December 6, 1937, plaintiff in error received a letter from O'Neil inclosing a draft for $870.76, from which he

was instructed to deduct the $440.05 which O'Neil owed him, and to retain the balance until O'Neil called for it. Later in the day O'Neil and King called to make settlement on the house, and delivered to him three more drafts which were involved in this case. All four drafts proved to be forgeries. After the house deal was completed, O'Neil demanded the balance due him on the draft he had mailed to plaintiff in error, the amount being $430.71. Plaintiff in error refused to turn over the cash until the draft had been paid by the bank upon which it was drawn. Of the other three drafts, the first was left at the collection window of the Continental National Bank of Lincoln for collection, with instructions to advise him when they received the returns. The other two drafts were deposited in the First National Bank of Lincoln by plaintiff in error, with the understanding that no withdrawals would be made until the bank had made collection. All of said drafts were returned unpaid as forgeries. Plaintiff in error then picked up the four drafts and handed them over to the police department.

There is evidence in the record that Beemer took part of the stolen drafts to plaintiff in error. There is also evidence that plaintiff in error visited Seiner at the penitentiary on several occasions, including December 6, 1937, the date which the forged drafts bear and the date they were deposited with the Lincoln banks. Beemer was called as a witness for the state and testified that he delivered the stolen drafts to plaintiff in error and that he was to have one-third of the proceeds obtained from the forgery of the drafts. There is evidence that Beemer agreed to and did obtain the blank drafts and a valid draft executed by E. W. Biggs & Co., at Fremont, and turned them over to plaintiff in error for transmission to Seiner for the purpose of having the drafts forged. Other evidence is in the record which connects the plaintiff in error with the forging and uttering of the drafts in question. Without relating all the details of the evidence, we are convinced the evidence is ample to take the case to the jury.

Plaintiff in error contends that there was a fatal variance

between the drafts described in several counts of the information and the ones offered in evidence to prove the allegations of the respective counts. Some of the drafts offered in evidence contained the following statement which was not contained in the drafts described in the information: "Payable only for merchandise as printed on reverse side of this sheet." On the back of the drafts offered in evidence there was listed the number of hides and furs purchased, with the weight, price per pound and the total purchase price, none of which was copied in the various counts of the information. The following also appears on the drafts offered in evidence and not on those described in the various counts of the information: "The payee accepts this draft in payment of the invoice on the reverse side of this sheet, and guarantees the count, weight and delivery of the merchandise listed."

It is the general rule in criminal prosecutions where written instruments enter into the gist of the offense that they should be set out literally correct, and the omission of any part of the instrument in the indictment constitutes a variance. *Haslip v. State,* 10 Neb. 590, 7 N. W. 331; *Sutton v. State,* 58 Neb. 567, 79 N. W. 154. But a variance between an instrument alleged in the information and the evidence offered in proof thereof is not fatal unless it is material to the merits of the case or such as may be prejudicial to the defendant. Comp. St. 1929, secs. 29-1501 to 29-1503. *Goldsberry v. State,* 66 Neb. 312, 92 N. W. 906; *Flannigan v. State,* 127 Neb. 640, 256 N. W. 321. The variance in the instant case was not material, and consequently not prejudicial. As was said in *Burlingim v. State,* 61 Neb. 276, 85 N. W. 76, it was the intention of the legislature in adopting the Criminal Code to provide a rational system of procedure for the trial of accused persons and the punishment of crime. It was clearly the intent of the legislature to abolish supertechnical rules requiring literal exactness between the information and the proof. The variances complained of in the instant case do not constitute a material element of the offense charged. Neither do they mislead the accused nor

in any manner prejudice his rights. Such variances between the information and the proof received in evidence are not fatal. The receipt of the drafts in evidence in the present case, though at variance with the information in the respects noted, does not constitute reversible error.

Plaintiff in error complains of the ruling of the trial court admitting in evidence certain letters written by Seiner to Beemer. The letters make reference to transactions involving a person referred to as "Paw" or "Pappy." The evidence of Beemer is to the effect that plaintiff in error was the person referred to as "Paw" or "Pappy" in these letters. It is evident from an examination of the letters that they were written to further the perpetration of the crime of forgery. Seiner was an inmate of the penitentiary and Beemer had been only recently released. Getting the blank drafts and samples into the penitentiary, in order that Seiner could do the forging, became a major problem. There is competent evidence that the plaintiff in error conveyed the drafts to and from Seiner. The letters in question substantiate this evidence and tend to show the whole transaction which culminated in the forging and uttering of the drafts. We think the applicable rule is that, where evidence is produced tending to show a common plan by several persons to commit a crime, the statements of each looking toward the carrying out of the plan are competent against the others. *Smith v. State,* 111 Neb. 432, 196 N. W. 633; *Fields v. State,* 107 Neb. 91, 185 N. W. 400.

Plaintiff in error contends that there was misconduct on the part of the trial judge in that he appeared in the hall of the courthouse during a recess with a number of the forged drafts in his hands, at a time when the jury were present. The warrants were in evidence and had undoubtedly already been examined by the jury. We fail to see where any prejudice could possibly be inferred from this circumstance. The implications attempted to be drawn from this incident do not appear from the record to be in any way justified.

Plaintiff in error complains of the following question asked him by the county attorney: "And in 1926 when you

forged checks up in Bellevue, Nebraska, I went up and straightened them up for you, with Charlie Matson?" Proper objection was made and sustained. A mistrial was requested and the request overruled. It is true that the trial court attempted by instruction to the jury to remove the prejudice produced by the question. Questions of a county attorney, stating that the accused had committed or had been charged with other crimes, are wholly improper and constitute misconduct on the part of the prosecutor. In the instant case it was followed up by the county attorney in his closing argument when he referred to the wife of plaintiff in error in the following language: "But I will tell you what happened. She left him because she was tired of putting up with these kind of situations." Such remarks are so inflammatory and prejudicial to the rights of the accused that the efficient effort of the trial court to overcome it by instructions to the jury to disregard it is without avail. As was said in *Leo v. State*, 63 Neb. 723, 89 N. W. 303: "The poisoned shaft had sped its way, and it is difficult to conceive how the jury could thereafter have been oblivious of or ignored the fact that the accused was a suspicious character, and under police surveillance, because believed to be engaged in the perpetration of 'other jobs,' or, in other words, in the commission of different crimes."

In *Elliott v. State*, 34 Neb. 48, 51 N. W. 315, the prosecutor asked the defendant if it was not true that he stole a horse in Burnett county, Texas, and that the sheriff of that county had a warrant for his arrest. In reversing the case the court said: "Such cross-examination is highly improper and cannot fail to be prejudicial. A prosecuting officer, in his zeal to enforce the law must not forget that he also occupies a semi-judicial position, and that his duty requires him to resort to no questionable or improper means to secure a conviction."

The transgression in the instant case was so flagrant that the attempt of the trial court to destroy its influence by instructing the jury to ignore it cannot cure the error. A mistrial should have been declared.

Plaintiff in error complains of the following extract from the closing argument of the county attorney: "He told you to watch and see whether I told you I thought that Balis was guilty. Do you remember that? I wrote everything down as fast as he said it. Now he said you wait and see. Gentlemen of the jury, I think Balis is guilty. I don't hesitate to come out and answer that. And I can make it a lot stronger than I think he is guilty. I have investigated this case from 'A to Z.' I have checked it carefully the same as any other cases and I have never yet—(interrupted).

"Why, gentlemen of the jury, he stood here for an hour and sought to paint a halo of sanctity about the head of this defendant. You heard the testimony. He said to you, 'Why, the defendant at this moment is in an hour of domestic tragedy by reason of his wife.' He didn't say what about his wife. So far as you know she might be in a hospital on her death-bed,—she might have had her leg cut off. But I will tell you what happened. She left him because she was tired of putting up with these kind of situations. Since he asked for it,—I didn't want to bring it out, but he asked for it. * * * And I tell you honestly and I answer Beynon that in my own heart and in my own mind I believe the defendant guilty." Proper objections were made to these statements and a mistrial requested.

"It is highly improper for the prosecuting attorney in a criminal case to declare to the jury his personal belief in defendant's guilt, unless such belief is given as a deduction from the evidence." *Olsen v. State*, 113 Neb. 69, 201 N. W. 969.

The prosecuting attorney told the jury that he had investigated this case from "A to Z" and "that in my own heart and in my own mind I believe the defendant guilty." These statements contain a logical inference that the county attorney's personal belief of the guilt of the accused may not have been based wholly on the evidence before the jury, but that it is based upon other evidence ferreted out which is not before the jury. This is, of course, highly prejudicial to the rights of the accused. The statement in the oral ar-

gument that the wife of the accused left him because she was tired of putting up with situations of this kind is not supported by any evidence. The only purpose to be accomplished by commenting upon the domestic relations of the accused and his wife was to inflame and prejudice the jury against plaintiff in error. Such statements have no place in the argument of a criminal case to a jury, and tend to deprive the accused of the fair and impartial trial to which he is entitled.

The following quotation expresses our views: "The prosecuting attorney should be permitted to argue the testimony, but has no right to state what he personally thinks or believes of defendant's guilt, except as shown by proof. If he has first-hand knowledge of facts which legitimately tend to show defendant's guilt, it is his duty to present them under oath from the witness-stand the same as any other witness. If his knowledge is only that based upon the testimony, he should confine himself to his duty as a prosecuting official." *People v. Hill,* 258 Mich. 79, 241 N. W. 873.

In our judgment, the expressions of the county attorney of his belief of the guilt of the accused, as shown by the record, are such as to require a reversal of the case.

A person accused of crime is clothed with a presumption of innocence until he is proved guilty by competent evidence beyond a reasonable doubt. Evidence of former charges of previous crimes, in no way connected with the offense for which the accused is being tried, are not admissible against him. Rules of evidence and conduct are prescribed to insure that the rights of the accused are maintained. It is the duty of a prosecuting attorney to conduct the trial in such a manner as will be fair and impartial to the rights of the accused, no matter how guilty. One accused of crime is entitled to a fair and impartial trial, uninfluenced by prejudice, passion or public clamor. *Cooper v. State,* 120 Neb. 598, 234 N. W. 406. We are not able, of course, to evaluate the amount of influence, if any, that the improper argument of the prosecuting attorney had upon the jury, but it was well calculated to draw their attention

from the real issues. The refusal of the trial court to grant a new trial on this ground alone was prejudicial error.

The state argues that the improper and prejudicial statements complained of were invited. The argument of defense counsel made to the jury does not appear in the record. There is nothing in the record therefore to substantiate this contention.

For the reason herein set forth, the judgment and sentence of the district court is reversed and the cause remanded for a new trial.

REVERSED.