CARIL ANN FUGATE, PLAINTIFF IN ERROR, v. STATE OF NEBRASKA, DEFENDANT IN ERROR.

99 N. W. 2d 868

Filed December 11, 1959. No. 34590.

*John McArthur* and *Merril R. Reller*, for plaintiff in error.

*Clarence S. Beck*, Attorney General, and *Cecil S. Brubaker*, for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an error proceeding from a verdict and judgment of the district court for Lancaster County on an information charging murder in the first degree on two counts. The first count charges that petitioner in error, who will be hereafter designated as the defendant, did unlawfully, feloniously, purposely and of her own deliberate and premeditated malice, kill Robert William Jensen. The second count charges that defendant did unlawfully, feloniously, and purposely in the perpetration of a robbery, kill Robert William Jensen. The jury returned a verdict of guilty of murder in the first degree on count two of the information and fixed the penalty at life imprisonment. After denying a motion for a new trial the trial court sentenced the defendant to imprisonment in the State Reformatory for Women at York, Nebraska, for the period of her natural life. From this verdict and judgment the defendant prosecutes error to this court.

The defendant assigns error in two respects: First, that the court erred in refusing to set aside the verdict and award the defendant a new trial on a showing that a juror made a pretrial bet that defendant would receive the death penalty, and second, that the court erred in receiving in evidence exhibits Nos. 42, 43, 44, 45, 46, 47, and 48.

As to the first assignment of error, the evidence that juror H. A. Walenta made a bet with Richard Weilage

that Caril Ann Fugate would get the electric chair was properly before the trial court in the form of affidavits in support of defendant's motion for a new trial. The facts disclosed by the affidavits are substantially as follows:

Richard Weilage stated that on Saturday, October 25, 1958, he was hunting pheasants with Walenta near Geneva, Nebraska, it being prior to the selection of a jury in the Fugate case. It was, however, after radio and television broadcasts concerning the murders alleged to have been committed by Charles Starkweather and Caril Ann Fugate. Weilage said he made a statement to Walenta to the following effect: "I'll bet a dollar she won't get the electric chair." Walenta replied: "I'll bet she does." The record shows that the bet was made. Weilage says the "bet" remark was a spontaneous passing remark similar to many others made by him and Walenta over the years which had never been considered seriously and none of which had ever been paid. Weilage said he never mentioned the matter to Walenta until after the trial was concluded, at which time Walenta agreed to pay it.

Walenta said that he made the bet as stated by Weilage at a time when he did not know that he would be called as a juror in the Fugate case. He said he testified on voir dire examination that he had expressed an opinion as to the guilt or innocence of Caril Ann Fugate based on news media which had come to his attention. He said he testified that he had no information from anyone connected with the case, that it would require no evidence to remove the opinion he had held, and that he could decide the case fairly and impartially upon the evidence adduced at the trial and the law as given by the court. He said further that he had completely forgotten the bet until he was reminded of it by a third person after the trial was over. He said further that he heard the case with an open mind and decided the case solely upon the evidence and the instructions of

the court, and that the bet played no part in the result.

Harold Jones stated that he heard of the bet and after the trial was over undertook to "kid" Walenta about losing the bet. He said when he mentioned it to Walenta on the day following the trial Walenta said: "I don't even remember how I bet," and that it was obvious Walenta had forgotten the bet until he mentioned it to him.

The foreman of the jury, T. C. Eichelberger, stated that Walenta had testified on voir dire that he had expressed an opinion as to the guilt or innocence of Caril Ann Fugate which was based solely on news media, that it would not take evidence to remove such opinion, and that he could and would enter upon the trial of the case with a free, open, and unbiased mind. Eichelberger further stated that at no time during the deliberations of the jury did any member request that the death penalty be included in the jury verdict, and that Walenta never mentioned the death penalty or requested that it be imposed.

The evidence contained in the affidavits is not conflicting in any respect and appears to be an honest reflection of the facts pertaining to the bet. It is plain that the bet was made on the nature of the penalty to be assessed, both participants assuming that a conviction would be had. It is shown that Walenta testified concerning his pretrial opinion that went to the guilt or innocence of the defendant which was based solely on news reports. He was not challenged for cause because of that opinion. We point out also that the evidence shows without dispute that the conduct of Walenta as a juror was wholly in conflict with the bet which he had made before he knew he would be called as a juror in the Fugate case. It is the contention of the defendant that a verdict in a criminal case is ipso facto nullified when it is subsequently discovered that a juror had made a bet as to the penalty that would be assessed. It is the contention of the State that the verdict should not

be disturbed under such circumstances in the absence of a showing of prejudice to the defendant.

It is a part of our fundamental law that the right of trial by jury shall remain inviolate. Art. I, § 6, Constitution of Nebraska. It is further provided that in all criminal prosecutions the accused shall have the right to appear and defend in person or by counsel, to demand the nature of the accusation, to meet the witnesses against him face to face, to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed. Art. I, § 11, Constitution of Nebraska. Under the statutory law of this state a prospective juror who has formed or expressed an opinion as to the guilt or innocence of the accused is subject to challenge for cause unless he falls within the proviso of section 29-2006, R. R. S. 1943, relating to pretrial opinions of jurors. Juror Walenta was clearly a qualified juror under the foregoing section of the statutes so far as his pretrial opinion was concerned and no contention is made to the contrary.

It is provided by section 29-2101, R. R. S. 1943, that a new trial may be granted for any of the reasons enumerated therein, including the misconduct of the jury, which affect materially the substantial rights of the defendant. It is apparent that the asserted ground for a new trial must affect adversely the substantial rights of the defendant, or, in other words, it must be shown that defendant was prejudiced thereby. By section 29-2308, R. R. S. 1943, this court is directed to disregard error without prejudice as follows: "No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case, on the grounds of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, if the Supreme Court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred."

The defendant contends that prejudice inheres in the verdict sufficient to nullify it by proof of betting by a prospective juror. Defendant cites the following authorities from other states: State v. Warm, 92 Vt. 447, 105 A. 244, 2 A. L. R. 811; Essex v. McPherson, 64 Ill. 349; Seaton v. Swem, 58 Iowa 41, 11 N. W. 726; Cluverius v. The Commonwealth, 81 Va. 787. In the Warm case the juror bet the cigars that the defendant would be found guilty, which he was. In the McPherson case the juror bet a necktie that defendant would receive a favorable verdict, which he did. In the Swem case the juror made a bet on the result of an election. Subsequently he sat as a juror in the contest of the election. The verdict was in favor of the party upon whose success the juror had wagered. In the Cluverius case the juror had been accepted as a juror in a murder case, when the prosecution discovered before the actual commencement of the trial proper that the juror had made a bet of a cigar that the defendant would not be convicted. The prosecution belatedly challenged the juror and the trial court excused the juror. It was contended on appeal that it was error to excuse the juror, an assignment that was not sustained.

We point out that in each of the foregoing cases the bet made by the juror was in accordance with the verdict in which he had participated. The present case is distinguishable from those cases in that Walenta acted as a juror completely contrary to his interest in the one-dollar bet.

The correct rule to be applied is: As a general rule a verdict will not be set aside for reasons that would be sufficient to disqualify a juror on a challenge for cause, which existed before the juror was sworn, but which was unknown to the accused until after the verdict, unless it appears from the whole case that the substantial rights of the accused were materially affected by the fact that the juror served in the case. Stouse v. State, 6 Okl. Cr. 415, 119 P. 271; Henderson v. State, 95 Okl.

Cr. 342, 246 P. 2d 393; State v. McDonald, 9 W. Va. 456; State v. Williams, 14 W. Va. 851. In the McDonald case the court said: "But it is a part of the rule, established by the courts of Virginia before our separation, that it must appear, that 'his, (Chamberlain's,) serving on the jury, caused injustice to be done to the prisoner.' The prisoner chose to submit this matter to the circuit court on such evidence as he had furnished in his affidavits, which do not tend to show that he did suffer any actual injustice; and has brought his case here on exceptions, without furnishing any evidence by which this Court can see that such was the result, we must hold the ruling of the circuit court to be correct on the question."

In the present case the defendant submitted the matter on affidavits which show that the defendant suffered no injustice or prejudice. It cannot be said that Walenta was influenced by any financial interest resulting from the bet since the verdict was contrary to any financial interest he had in it. It is evident that the bet was based on the opinion he had formed from news reports to which he testified on voir dire examination, and in which he stated that he could lay aside his opinion and try the case as a fair and impartial juror. His qualifications as a juror were acceptable to the defense since he was not challenged for cause. It appears rather conclusive that Walenta did lay aside his pretrial opinion and try the case on the law and the evidence, as he on oath promised to do, and had in fact forgotten or disregarded the bet when he qualified and served on the jury. We think the trial court properly found from the evidence submitted that the substantial rights of defendant were not affected by Walenta serving on the jury.

The evidence shows that defendant was an accomplice of one Charles Starkweather in the killing of Robert William Jensen. The evidence also shows that Starkweather killed 10 other persons, in the killing of 9 of which defendant was a participant during a series of

events continuing through a period of several days. The evidence of defendant's guilt is conclusive and we fail to see how any fair and impartial jury could arrive at any different result. The defendant does not even contend that the evidence is insufficient to sustain the verdict of the jury. The conclusiveness of the evidence supports the view that defendant had a fair and impartial trial and that the service of Walenta as a juror under the circumstances shown did not result in any injustice to the defendant. We find nothing in the record to show that the constitutional rights of defendant were not fully protected.

The defendant contends that the trial court erred in admitting exhibits Nos. 42, 43, 44, 45, 46, 47, and 48 in evidence on rebuttal. The exhibits were photographs of various rooms in Caril Ann Fugate's home. All but three of the photographs were taken on January 27, 1958, and the remaining on the following day. The evidence shows that Robert William Jensen was murdered on January 27, 1958. It is shown by the evidence that the defendant and Charles Starkweather lived in defendant's home for several days immediately prior to the Jensen murder, and after the killing of defendant's mother, step-father, and half-sister. The photographs were offered to refute the testimony of defendant's grandmother, Pansy Street, who had testified for defendant as to the condition of the home at or near the time defendant and Starkweather left it.

The defendant objected to the admission of the photographs in evidence for the reason that the foundation was insufficient and that they were not binding on the defendant. No objection was made that the admission of the photographs constituted improper rebuttal. It is fundamental that error may not be predicated on a ground not preserved by a proper objection. The rule is stated in Havlicek v. State, 101 Neb. 782, 165 N. W. 251, as follows: "It is the duty of counsel to make his objections so specific that the court may understand

the point intended to be raised, and, unless prejudicially erroneous on the point presented, the admission of the evidence to which objection is offered will not be held prejudicially erroneous for some reason which counsel did not suggest at the trial." See, also, Turpit v. State, 154 Neb. 385, 48 N. W. 2d 83.

The photographer testified that the photographs correctly represented the existing conditions in the home at the time they were taken. The foundation was sufficient for their admission into evidence. In any event, it is within the discretion of the court to permit in rebuttal the introduction of evidence not strictly rebutting. Pribyl v. State, 165 Neb. 691, 87 N. W. 2d 201; Parker v. State, 164 Neb. 614, 83 N. W. 2d 347. The photographs admitted do not appear material to the issues in the case. The admission of such evidence, even if erroneous, does not constitute prejudicial error in the absence of a showing of prejudice. None is here shown. Svehla v. State, 168 Neb. 553, 96 N. W. 2d 649; Carrall v. State, 53 Neb. 431, 73 N. W. 939.

On the hearing on the motion for a new trial the defendant offered in evidence the affidavits of Pansy Street and Robert VonBusch for the purpose of showing a want of foundation for the questioned photographs. There is no showing that this evidence was not available to the defendant at the trial. In fact, the record discloses that both of these witnesses testified for the defendant at the trial. It is fundamental that a defendant may not withhold evidence known to him at his trial and subsequently use it as a basis for a new trial. The correctness of a trial court's ruling on the admission of evidence must be determined by the record before it at the time the ruling was made. Such a ruling presents a question of law which canont be presented to the trial court by motion for a new trial through the medium of affidavits. Huempfner v. Bailly, 36 S. D. 533, 156 N. W. 78. In any event, as we have heretofore stated, the affidavits pertained to an immaterial issue and do not sup-

port any theory on which defendant can properly assert a right to a new trial.

The granting or refusal of a new trial rests in the sound discretion of the trial court, and its ruling thereon will not be disturbed unless there has been a clear abuse of such discretion. Baskins v. State, 139 Neb. 803, 299 N. W. 188. The evidence abundantly supports the judgment of the trial court in denying the defendant a new trial. The judgment of the district court in denying a new trial is in all respects correct and it is affirmed.

AFFIRMED.