STATE OF NEBRASKA, APPELLEE, V. VIRGIL D. RILEY ET AL., APPELLANTS.

154 N. W. 2d 741

Filed December 1, 1967.   No. 36530.

Donn E. Davis, for appellant.

Clarence, A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

The only question involved in this case is whether the district court should have sustained a motion for a mistrial because of the admission, over objection, of certain fingerprint records of the defendants in evidence.

The defendants, Henry Reichel and Virgil D. Riley, were jointly tried and convicted by a jury of burglary and subsequently sentenced by the district court to a term of years in the Nebraska Penal and Correctional Complex. The defendants appeal. We affirm the judgment.

The evidence, presented almost entirely by the prosecution, is undisputed. The defendants, in clean clothes, were observed in a tavern in Lincoln, Nebraska, between 9 p.m. and 12 p.m. on the evening of Saturday, July 9, 1966. Early in the morning of July 10, 1966, both a window in the laboratory complex and in the lunch room of the Northwestern Metal Company building in Lincoln, Lancaster County, Nebraska, were broken in. Inside the lunch room a candy machine was broken open, and a 7-Up machine had been "jimmied open." In the office of the building, several tools, including crow bars, a screw driver, and a piece of the handle from the vault were found on a table near the vault which someone had attempted to break into. At approximately 3:30 a.m., two police officers, Louis Harroun and Richard

Kucera, were ordered to the Northwestern Metal Company plant. A burglar alarm was ringing when they arrived and shortly thereafter the officers noticed a car near the plant traveling at a high rate of speed. No other cars were moving in the vicinity. This car was followed for a few blocks at a high rate of speed, officer Harroun stopped it, and discovered the defendants, Henry Reichel and Virgil D. Riley, in the car with Reichel driving. Both men were perspiring freely and their clothes were badly soiled with black dirt or dust, and Reichel had a rip in the back of his trousers. Inside the plant is a smelter and an officer of the corporation described this process as a dirty operation involving dust and smoke which sometimes requires the use of respirators by employees. On July 10, 1966, at about 4:20 a.m., a few minutes after the apprehension of the defendants, Kenneth Smith, a police officer, made an examination of the candy and 7-Up machines which had been broken into. On the candy machine he found and collected a latent palmprint of identifiable quality (exhibit 22). On the 7-Up machine he found and collected two identifiable latent fingerprints (exhibits 23 and 24).

A Lincoln police officer, Stanley P. Gushard, a qualified fingerprint expert who was the identification officer of the Lincoln police department in charge of the criminal records and the identification bureau, testified that a known fingerprint of the defendant Henry Reichel taken at the county jail subsequent to his arrest (exhibit 21) and a known fingerprint of Henry Reichel taken from the Lincoln police department's files (exhibit 26) were made by the same person whose fingerprint was found on the 7-Up machine which had been broken into (exhibit 23). As to the defendant Riley, Gushard testified that he had taken a set of fingerprints of Riley about 1964 (exhibit 25). He testified that these known fingerprints in exhibit 25 were made by the same person whose fingerprints were found on the 7-Up machine and identified as exhibit 24.

Defendants objected to exhibits 25 and 26 and moved for a mistrial substantially on the grounds that they tended to show prior criminal activity on the part of the defendants, and each of them, and were therefore incompetent, irrelevant, immaterial, and prejudicial to the rights of the defendants.

It is, of course, a fundamental rule that the evidence of the commission of other crimes or being tried for other crimes (with exceptions) is incompetent, irrelevant, and immaterial and ordinarily prejudicial to the rights of a defendant. Garcia v. State, 159 Neb. 571, 68 N. W. 2d 151; Balis v. State, 137 Neb. 835, 291 N. W. 477; Leo v. State, 63 Neb. 723, 89 N. W. 303. The record in this case is wholly devoid of any evidence or proof submitted to the jury of prior commission of crimes by either of the defendants or that they were charged with any previous crimes. The most that can be said of exhibits 25 and 26, which were fingerprint records obtained from the files of the Lincoln police department, one having been taken in 1964, is that they infer that the defendants had some prior contact with the police. It is only by suspicion, surmise, and conjecture that a conclusion of any prior criminal activity could be reached. There is no legal inference of the commission of another crime or being charged with another crime from the fact that a police identification department has on record the fingerprints of a person. Fingerprint identity testified to by a qualified expert is perhaps the best known method of the highest probative value in establishing identification. See Annotation, Evidence-Finger, Palm, or Footprint, 28 A. L. R. 2d 1115. With reference to a similar contention that photographing and fingerprinting by a police identification department were prejudicial because of evidence of being regarded as a criminal by the police department, the court said in Bridges v. State, 247 Wis. 350, 19 N. W. 2d 529, as follows: "In this age and particularly in these times it is a matter of common knowledge that it has become customary and con-

sidered proper in private business and industry, as well as in public service and institutions, to take photographs and fingerprints of individuals, who are connected therewith or engaged or detained therein, for their identification for many other purposes or respects than in criminal matters. It is commonly known that such photographing and fingerprinting is a matter of daily practice and the usual method of identification used in the police service in populous communities of persons arrested,—but not yet convicted,—for violations. The use of that practice, and method is considered to be for the common good and the rights of police authorities to resort thereto has been recognized in most jurisdictions, and such use thereof is, in itself, not considered a badge of crime. As a physical invasion it amounts to almost nothing, and as a humiliation or stigma it can never amount to as much as that caused by the publicity attending the arrest on a sensational charge to which innocent men may have to submit. United States v. Kelly (2 Cir.), 55 Fed. (2d) 67, 83 A. L. R. 122; Shaffer v. United States, 24 App. D. C. 417; Downs by Swann, 111 Md. 53, 73 Atl. 653, 23 L.R.A. (N. S.) 739; Hodgeman v. Olsen, 86 Wash. 615, 150 Pac. 1122, L. R. A. 1916A, 739. Consequently there is no occasion to conclude that the proof of photographing and fingerprinting was prejudicial to defendant."

Defendants rely almost exclusively on a 1929 California case. People v. Van Cleave, 208 Cal. 295, 280 P. 983. The defendants do not cite and we are unable to find any other prior or subsequent case that bars the admission into evidence for identification purposes of a fingerprint record taken prior to the arrest of a defendant for the offense charged. Not only was this case decided in a different time perspective when fingerprint identification was closely associated with serious criminal activity or offenses, but the California court in this case held, under the circumstances of that case, that the evidence was completely irrelevant to any of the issues

in the case, the defendant having admitted making the fingerprint in question. The court also held that since the case was an extremely close one on the facts, that the reception of such evidence was prejudicial. It is also noted that this was a 4 to 2 decision with two judges dissenting.

The defendants' contentions must be rejected for an even more important reason. As already noted, fingerprint identification evidence is probably the most highly relevant evidence of identification possible in our society. Without question, the fingerprint identification evidence in this case, even though cumulative with respect to the defendant Reichel, was extremely relevant. Even if we assumed that there was an inference of prior criminal activity to be deduced from the prior fingerprint identification records on file with the police department, nevertheless this evidence was clearly admissible. The "other-crimes" rule is a rule of relevance and such evidence is ordinarily prejudicial because prior criminal activity is irrelevant to the proof of the commission of a specific crime. Where such evidence, however, is in fact relevant the "other-crimes" rule does not apply. As recently as in State v. Knecht, 181 Neb. 149, 147 N. W. 2d 167, we stated the rule as follows: "The defendant cites cases holding that a mistrial should be granted where evidence of other crimes is brought into the record. It is not necessary to discuss these cases here. It is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constituent elements of the crime with which the accused is charged even though such facts and circumstances may prove or tend to prove that the defendant committed other crimes."

In the above case a police officer testified, in a burglary case, that part of the property found in the automobile where the defendant and others were found, was turned over to the Iowa law enforcement authorities. Our court held, as is true in the present case, that:

"There was no direct evidence of another crime but only an inference thereof as stated by defendant's counsel." Other cases supporting this distinction and this rule are Peery v. State, 165 Neb. 752, 87 N. W. 2d 378; and State v. Rand, 238 Iowa 250, 25 N. W. 2d 800, 170 A. L. R. 289. There is no merit to this contention of the defendants.

Defendants also complain of the cumulative effect of testimony of various police officers that they knew or were acquainted with the defendants. Courtroom identification of the defendants was established in this manner. This testimony was all admitted without any objection whatsoever and of course could not be grounds for error. Fugate v. State, 169 Neb. 420, 99 N. W. 2d 868; Turpit v. State, 154 Neb. 385, 48 N. W. 2d 83. But again this testimony was necessary and absolutely essential to lay the foundation for the identification testimony of the police expert on identification and by the different officers who identified the defendants near the scene and who took defendant Reichel's fingerprints in the county jail. There was no proof or inference from this testimony that the defendants had committed or had been charged with committing a prior criminal offense. And, as we have seen, even if it did lend itself to speculation that the defendants had prior contact with the police, this testimony was highly relevant and necessary for foundation purposes and therefore admissible.

Despite all of this, defendants argue that the cumulative impact of this testimony was such as to deny the defendants a fair trial. A sufficient answer to this is that the undisputed evidence in this case, consisting almost entirely of the prosecution's evidence, overwhelmingly and unequivocally points towards the defendants' guilt. Even if we were to hold, which we do not, that there was error in the record in this case, an examination of the entire case and the record herein conclusively show that there has been no substantial miscarriage of justice.

It therefore follows that the judgment should be affirmed. See § 29-2308, R. R. S. 1943.

Complaint is made of the form in which some of the exhibits were submitted to the jury. The record demonstrates that the trial court, before the submission of the exhibits to the jury, carefully and properly excluded and excised from the fingerprint exhibits any possible prejudicial information contained therein or the suggestion that there was such information attached to such exhibits in their original form. We note that the trial court also carefully gave an instruction protecting the rights of each defendant with reference to testimony introduced against the other defendant.

The judgment of the district court is correct and is affirmed.

AFFIRMED.

McCOWN and SMITH, JJ., concurring in result.

The evidence established that defendant Reichel's palm print and fingerprints had been separately taken after his arrest in 1966. Both of these were identified and connected with the latent prints at the scene of the crime. The prosecution later introduced an additional fingerprint record of Reichel taken from the police files and likewise identified and connected it. The majority opinion concedes that the additional fingerprint identification as to Reichel was cumulative, but holds it "extremely relevant" and admissible. Where the fingerprint identification had already been established by proper evidence, the later introduction of additional fingerprints from the police files not only was cumulative, but the purpose of its introduction might reasonably be said to have been directed at the inference of prior criminal activity and prior police contact rather than fingerprint identification. Under such circumstances, it was extremely "irrelevant" rather than "relevant" and it should have been inadmissible. This court should not even indirectly imply an approval of such procedure. In "a close case" or in a case in which the purpose as

to evidence of "other crimes" is more clear, the majority holding on this issue is probably insupportable. People v. Van Cleave, 208 Cal. 295, 280 P. 983.