## STATE v. GLEN RAY HOLSCHER.*

113 N. W. (2d) 94.

January 19, 1962—No. 37,870.

*Glen Ray Holscher,* pro se, for petitioner.

*Walter F. Mondale,* Attorney General, *George M. Scott,* County Attorney, and *Per M. Larson,* Assistant County Attorney, for respondent.

DELL, CHIEF JUSTICE.

This matter is before us on a writ of error to review a judgment of conviction of murder in the third degree.

On January 16, 1959, the defendant was indicted by the grand jury of the crime of murder in the first degree. The indictment, among other things, alleged that the defendant, armed with a revolver or other instrument, did "assault, kill and murder [one] Patricia Gross, by then and there striking, stabbing, thrusting and cutting at, upon and into her head, body and person," inflicting a mortal wound and causing her death on January 10, 1959. The defendant was arraigned on January 19, 1959, at which time he entered a plea of not guilty. After a trial by jury he was found guilty of murder in the third degree and was sentenced to the State Prison at Stillwater.

According to the evidence introduced by the state, on the evening of January 9, 1959, defendant entered the Gross home in Minneapolis

---

*Certiorari denied, — U. S. —, 82 S. Ct. 1607, — L. ed. (2d) —.

and brutally assaulted four minor children, inflicting fatal wounds on Patricia Gross, an 11-year-old girl. The defendant was identified as the murderer by Robert Gross, the 15-year-old brother of the deceased. He stated that on the evening in question his mother left at about 8:30 p. m., leaving him, Patricia, his 8-year-old sister, Colleen, and a 6-year-old neighbor girl in the home. Shortly after midnight Robert, hearing a noise, went downstairs and saw the defendant with a revolver in his hand. He had met the defendant on two previous occasions. He described in detail the beatings inflicted upon him as well as the other children. Other evidence established that a piece of metal found at the scene of the murder was a part of the trigger of a revolver subsequently found in the defendant's automobile.

The defendant, who appears in propria persona on this appeal, assigns 21 errors which he contends require a reversal of the judgment of conviction. He claims, for example, that an instruction given to the jury after it had been out for some 22 hours, referring to its duty to endeavor to come to an agreement, was coercive and prejudicial. The instruction given was basically the same as that reviewed and approved in State v. Friend, 154 Minn. 428, 191 N. W. 926.[1]

The defendant also contends that the witness Robert Gross was mentally incompetent although there is no evidence to substantiate this contention at all. To the contrary, the record affirmatively shows that Robert was a student in a public high school.

In the main the alleged "errors" are merely argumentative assertions bordering on the frivolous and require no comment. Nevertheless the record has been carefully examined to ascertain whether the defendant was afforded a fair and impartial trial.

From the testimony and exhibits received in evidence it appears that following the killing the officers found a .38 Smith & Wesson revolver, which the state claimed was used in the bludgeoning, "under the dashboard" of the defendant's car. The defendant admitted it belonged to him and said that he carried it into the Gross house. He said that someone handed it to him at the tavern the night before the killing.

---

[1]See, also, State v. Doan, 225 Minn. 193, 30 N. W. (2d) 539; State v. Anderson, 247 Minn. 469, 78 N. W. (2d) 320.

There was evidence, however, from a witness who stated that he had sold it to the defendant shortly before the crime. Defendant also admitted that the reason he left the tavern was "to take some action" against a person in the Gross household; that he found the door of the house open and entered. He also gave these answers to the following questions:

"Q. After you left this home, did you notice your hands?
"A. Yes, I did.
"Q. What was unusual about your hands?
"A. I had blood on my hands and on my top coat.

                *    *    *    *    *

"Q. At that time you realized that you had done something wrong?
"A. Yes. * * *

                *    *    *    *    *

"Q. What did you do then after you noticed that you had blood on your hands and on your sleeve of your top coat?
"A. I drove the car in the yard where I live at 308-16th Avenue and went up and took my top coat off and suit coat and shirt, changed my shirt and jacket and my shoes and then I went down to the Music Bar and had a drink.
"Q. When you got home, did you wash your hands?
"A. Yes, I did.
"Q. Did you wash all the blood off your hands?
"A. I believe I did. Yes."

Finally, when asked if he had committed the assaults and murder, he answered, "I don't remember, but I must have been."

The crime was revolting and brutal. The Hennepin County coroner testified: "The skull itself was covered with blood and when we went to remove enough of the skull so that we could remove the brain, why, it just completely fell apart. We had 16 fragments of the skull instead of what would normally come loose or come away in one piece."

The evidence of his guilt was overwhelming. He was exceptionally well represented by competent counsel, the public defender, and there were no errors of a prejudicial nature. After a writ of error had been

issued by this court, the trial court ordered that the defendant be furnished two partial transcripts, totaling 370 pages, covering the testimony of the main witnesses and the instructions. It did this at the expense of Hennepin County notwithstanding that the defendant had failed to specify the questions he desired to review on appeal as is required.[2] It clearly appears that in every respect care was taken to protect and safeguard the rights of the defendant.

It is unfortunate that overburdened courts, court reporters, and other officials are compelled to spend their time, and that counties are compelled to spend large sums of money, in furnishing transcripts to defendants so clearly guilty as in this instance. But so long as Griffin v. Illinois, 351 U. S. 12, 76 S. Ct. 585, 100 L. ed. 891, 55 A. L. R. (2d) 1055, and later decisions of the United States Supreme Court stand, there appears to be no other course open to us.

The judgment of conviction is affirmed and the writ discharged. Affirmed.

[2]See, State v. James, 252 Minn. 243, 89 N. W. (2d) 904.