STATE OF NEBRASKA, APPELLEE, v. MELVIN WILLIAM HOMAN, APPELLANT.
141 N. W. 2d 30

Filed March 18, 1966. No. 36157.

James E. Abboud, Jr., and Henry G. Brown for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and KOKJER, District Judge.

McCOWN, J.

The defendant was convicted of the crime of shooting with intent to kill, wound, or maim. His wife was the alleged target.

The evidence shows that the defendant returned home

intoxicated at approximately 6 p.m., April 5, 1965. He had some conversation with his wife. Some of his children were present in the house. The defendant and his wife went from the kitchen into the dining room. His wife was "scared." She saw him take a gun from a buffet drawer and took the children and ran from the dining room, through the living room, and out the front door. She heard the gun go off behind her. The bullet entered the wall above the archway between the dining room and the living room. The defendant later, on the front porch, fired a shot in the direction of an approaching policeman, although his arm was deflected. Two spent cartridges were found on the front porch and one in the dining room. The police took the gun from the defendant on the front porch. The defendant's wife testified that she did not believe her husband was shooting at her because the bullet entered the wall near the ceiling. The defendant testified that the gun went off accidentally in the dining room and again accidentally on the porch.

The defendant's arguments on appeal all center on a claim of violation of his constitutional rights within the rule of Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977.

The evidence shows that the intoxicated defendant was taken to the police station, booked, and placed in jail. The next morning at approximately 8 a.m., he was interviewed in the interrogation room. The interviewing officer testified to certain statements made by the defendant in the interview. The officer's testimony included: "He states that the shooting incident occurred because of an argument with his wife concerning his heavy drinking lately. When asked why he wanted to kill his wife, he stated no reason, she's just been on my back."

No objection was made to the introduction of the officer's testimony. There is no evidence that the defendant ever requested counsel, although he does testi-

fy that he asked to use a telephone, and was refused. The defendant himself did not testify that he was not told that he had a right to counsel nor that he was not told that he did not need to say anything; and he did not testify that he was not told that anything he said might be used against him. There is no claim that any threats were used or any promises made. There is no evidence of abuse or misconduct of any kind on the part of the police. There is no evidence whatever as to whether the defendant knew he had a right not to say anything, nor whether he knew that statements made might be used against him. There is no evidence of the defendant's educational level or mental ability being anything but normal. His physical condition was affected only by the fact that he had a hangover.

The defendant's own testimony as to the interrogation was:

"Q. Now, did they ask you to answer any questions? A. Yes, they did. Q. What was your response to that? A. Well, I answered most of them. Q. Did you ask to use the phone? A. I did. Q. What did they say? A. I was refused."

The only testimony as to the fact of whether the defendant was advised that he did not need to speak or that he had a right to counsel was that of the interrogating officer who testified that he did not remember whether he had advised the defendant that he did not need to talk to him, or that he had a right to counsel.

In this case, it is quite clear that the defendant never requested counsel, and there is no affirmative testimony of anyone that he was not warned of his right to remain silent, or that he was not warned that anything he said might be used against him. There is simply the absence of specific affirmative testimony that he was warned or advised. Under such circumstances, the case clearly does not come within the ambit of the Escobedo rule. It is even questionable whether it comes within the undetermined area of possible extension of the Escobedo rule.

In any event, and under these circumstances, and at a time almost a year after the Escobedo decision, there was no objection made to the introduction of the evidence involving the defendant's statements. The issues of the voluntariness of the statements and the constitutional rights of the defendant under the Escobedo rule were not raised in the motions to dismiss made at the conclusion of the State's evidence and again at the conclusion of the trial. The issue of the constitutional rights of the defendant within the ambit of the Escobedo rule was raised for the first time in the motion for a new trial.

Under the circumstances here, there is no reason whatever to depart from the fundamental principal of criminal procedure that in order to predicate error on the reception of inadmissible evidence, there must have been objection made contemporaneously with the offer thereof. Fugate v. State, 169 Neb. 420, 99 N. W. 2d 868; State v. Longmore, 178 Neb. 509, 134 N. W. 2d 66.

Under the circumstances here, no error was committed by the district court and the judgment is affirmed.

AFFIRMED.