**STATE OF MINNESOTA ex rel. Glen R. HOLSCHER, Appellant,**

v.

**Ralph H. TAHASH, Warden, Minnesota State Penitentiary, Appellee.**

**No. 18207.**

United States Court of Appeals Eighth Circuit.

Aug. 19, 1966.

See also 8 Cir., 346 F.2d 556.

David M. Beadie, of Doherty, Rumble & Butler, St. Paul, Minn., for appellant.

Gerard W. Snell, Sol. Gen. for State of Minn., St. Paul, Minn., for appellee. Robert W. Mattson, Atty. Gen. for State of Minnesota, St. Paul, Minn., was with him on the brief.

Before JOHNSEN and BLACKMUN, Circuit Judges, and YOUNG, District Judge.

BLACKMUN, Circuit Judge.

This habeas corpus case in forma pauperis has been here before. State of Minnesota ex rel. Holscher v. Tahash, 346 F.2d 556 (8 Cir. 1965).

Glen Ray Holscher, now 32 years of age, in January 1959 was indicted by a Hennepin County, Minnesota, grand jury for the crime of murder in the first degree, as defined in Minn.Stat. § 619.07 (1957) [1] (perpetration with a premeditated design to effect death). A female child, 11 years of age, was the murder victim; three other children were also assaulted. After a plea of not guilty a jury convicted Holscher in February 1959 of murder in the third degree, as defined in Minn.Stat. § 619.10 (1957) [2] (perpetration without premeditated design to effect death, but by an act "eminently dangerous to others, and evincing a depraved mind, regardless of human life, * * * by a person engaged in the commission of * * * any felony, except * * *"). Holscher received an indeterminate sentence of from 14 to 60 years in the state penitentiary.[3] A writ

1. Since repealed and replaced by § 609.185 of the Minnesota Criminal Code of 1963, Laws 1963, c. 753, M.S.A. § 609.185.

2. Since repealed and replaced by § 609.-195 of the Minnesota Criminal Code of 1963, Laws 1963, c. 753, M.S.A. § 609.-195.

3. This was double the third degree murder range of 7 to 30 years specified by Minn.Stat. § 619.10, and was occasioned by the prior felony statute, Minn.Stat. § 610.28 (1957), since repealed and replaced by § 609.155 of the Minnesota Criminal Code of 1963, Laws 1963, c. 753, M.S.A. § 609.155.

of error was pursued but the conviction was affirmed. State v. Holscher, 261 Minn. 478, 113 N.W.2d 94 (1962). Certiorari was denied, 370 U.S. 955, 82 S.Ct. 1607, 8 L.Ed.2d 821.

■ Holscher thereafter filed various petitions in the state courts attacking his conviction and sentence.[4] In 1963 he filed his habeas corpus petition in federal court. A hearing was held. Petitioner was there represented by experienced court-appointed counsel. The district court denied the application for the writ. We granted a certificate of probable cause, under 28 U.S.C. § 2253, and appointed new counsel for the appeal. That review, as does this one, centered upon the application of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908 (1964), to Holscher's facts. We there concluded that, on the record then before us, we were unable to determine whether there was any factual basis for the application of *Escobedo* or *Jackson.* We carefully disavowed any implication as to our attitude on retrospectivity of those decisions. We reversed and remanded the case with directions that the district court make findings and conclusions and, if deemed necessary, receive additional evidence. Pp. 557–558 of 346 F.2d.

The district court did in fact hold a further hearing in June 1965. Both court-appointed counsel for Holscher were present. Among the witnesses were Holscher himself and Lewis E. Lohmann who, as public defender, had represented Holscher in the state trial.

There is no dispute as to most of the facts: Holscher was arrested at his home about two a. m. on January 10, 1959.

He was taken to the Minneapolis police station and questioned. He conceded nothing initially. That morning he was twice taken to the hospital where he was identified as the assailant by two of the children. He was returned to the station, booked, and lodged in jail. He orally confessed. He informed the police where a gun in his automobile was located. It was found there. The tip of its trigger had been broken off. The missing piece was later found at the scene of the crime. In the early afternoon he signed his first written statement. Two other written statements were taken from him two and four days later, respectively.

Holscher was arraigned on January 19. Counsel was appointed and a plea of not guilty was entered for him at that time but he had not seen or consulted with counsel when his statements were taken.

At the trial the first two written statements and a portion of the third were read to the jury. The state trial court instructed the jury that it was not bound to accept any confession, that before it could consider a confession it must "find whether or not it was voluntarily given" and that, if it found it was not voluntarily made, it was its duty to disregard it entirely.

The federal district court in due course made findings of fact and conclusions of law based upon the evidence taken at both the 1963 and 1965 hearings. It found, specifically, that Holscher was confined in the Minnesota state penitentiary; that the statements taken from him and read at his trial were received in evidence without objection; that he made these statements voluntarily; that, although Holscher himself testified otherwise, he "made no request to call or see an attorney before or during the inter-

4. In 1962 Holscher was successful in his attack upon his prior felony conviction. This would appear to entitle him to a vacation of the doubled sentence and to the imposition of a proper one in its place. The State so concedes but asserts that state remedies remain available to Holscher to correct this situation and that, therefore, federal habeas corpus is premature. This, indeed, appears to be the case. State ex rel. Holm v. Tahash, 272 Minn. 466, 139 N.W.2d 161 (1965). See Nelson v. Tahash, 347 F.2d 500, 502 (8 Cir. 1965). Holscher makes no point on the present appeal as to the integrity of his sentence so far as its doubled length is concerned. We therefore pass this aspect by for the reason suggested by the State.

rogation incident to the taking of the statements"; that he was not denied an opportunity to consult with counsel; and that the "police did not inform the petitioner of a right to counsel nor did they warn him of the right to remain silent". It concluded that the statements were properly received in evidence; that they were not taken in violation of Holscher's Sixth Amendment right to assistance of counsel; that his rights as expressed by *Escobedo* were not violated; that he was not deprived of due process under Jackson v. Denno; that "This Court, after two hearings and an examination of the record in this case, has made an independent determination on the issue of the voluntariness of the statements made by petitioner and admitted into evidence against him, and has found that the statements were made voluntarily"; that his "right under Jackson v. Denno to a fair hearing and to a reliable determination on the issue of voluntariness has been satisfied"; that Holscher waived his right to object to the admission of the statements; that *Escobedo* and *Jackson* are not retroactive or applicable to Holscher "since his conviction became final before the decisions in those cases"; and that all Holscher's constitutional rights "have been adhered to, lived up to, and respected by the Minnesota courts and the police". The petition for writ of habeas corpus, accordingly, was denied.

Holscher's application for a certificate of probable cause was also denied by the district court. We, however, again granted the certificate.

■ We have carefully read the transcripts of the district court hearings. Although Holscher's testimony and that of all other witnesses, including his trial counsel are somewhat at variance, as is not unusual in cases of this kind, the record clearly affords substantial and most adequate support for the findings of fact which the district court has now made. The significant ones, of course, are those relative to the voluntary character of the statements, their receipt at the trial without objection, the absence of any request by Holscher to see an attorney, the absence of any denial of opportunity to consult with counsel, and, certainly favorable to him, the absence of advice to him of his rights to a lawyer and to remain silent.

With the knowledge of counsel we have withheld decision in Holscher's present appeal for a short time pending the promulgation of opinions by the Supreme Court on its review of State v. Miranda, 98 Ariz. 18, 401 P.2d 721 (1965), and of other cases having to do with police interrogation, confessions, and the retrospective application of recent decisions. These cases have now come down. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). They afford us guidance here for our own decision as to the claimed violations of Holscher's constitutional rights.

The *Escobedo* or self-incrimination issue. Although Escobedo's facts were stronger than Holscher's (the existence of counsel, the making of requests to see counsel, and the refusal of counsel's access to his client), we would have no difficulty in concluding that at the time Holscher's statements were made the interrogation process had progressed beyond the investigation phase and had, indeed, focused on him. Moreover, certain of the Fifth Amendment procedural safeguards now imposed and made mandatory by *Miranda* were clearly not fulfilled at the time Holscher was subjected to custodial interrogation by the Minneapolis police: he was not warned that he had a right to remain silent; he was not warned that any statement he made could be used as evidence against him; and he was not warned that he had a right to the presence of an attorney, either retained or appointed. It is obvious, therefore, that, had Holscher's trial taken place after the dates of the Supreme Court's *Escobedo* and *Miranda* decisions, his statements would not be admissible in evidence unless he effectively waived his privilege against self-incrimination.

■■ Although the state would possess "a heavy burden" on the waiver issue, see Miranda v. State of Arizona, supra, p. 475 of 384 U.S., 86 S.Ct. 1602, we need not resolve the waiver question here. This is because the Supreme Court, in Johnson v. State of New Jersey, supra (where the petitioner had unsuccessfully asked for a lawyer during his interrogation), held that Escobedo, decided June 22, 1964, and Miranda, decided June 13, 1966, are not to be applied retroactively but apply only to persons whose trials began after those decisions were respectively announced. Inasmuch as Holscher's state trial took place in 1959, this holding eliminates the new guidelines of Escobedo and Miranda from the present appeal. The self-incrimination point thus lacks effective substance here.

■ The Jackson or procedural due process issue. Jackson v. Denno presents a different problem. The decision in Jackson, by which the New York procedure of leaving to the trial jury the determination of the voluntary character of a confession was held violative of federal due process, seemed to us to be so fundamental and so directed to "the very integrity of the fact-finding process", see Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed. 2d 601 (1965), as necessarily to be retrospective in application. We so held some months ago in a case concerning the then existing Arkansas procedure which Mr. Justice Black, in the appendix to his separate opinion in Jackson, p. 414 of 378 U.S., 84 S.Ct. 1774, described as conforming to that of New York. We said, "But Jackson v. Denno has now been decided and there is no serious question relative to retrospective application". Mitchell v. Stephens, 353 F.2d 129, 144 (8 Cir. 1965), cert. denied 384 U.S. 1019, 86 S.Ct. 1966, 16 L.Ed.2d 1042. We then called for a state court hearing after a trial which had been held in 1959. On the basis of that observation and holding, therefore, our conclusion here would be that Holscher is entitled to retrospective application of Jackson v. Denno.

But in the meantime the Supreme Court of Minnesota gave us reason to pause. That state's procedure, followed at Holscher's trial, for the determination of the voluntary character of a confession appears to have been similar to that of New York. See State v. Schabert, 218 Minn. 1, 7–9, 15 N.W.2d 585, 588–589 (1944). With perhaps some hesitancy, it was so described by Mr. Justice Black, p. 415 of 378 U.S., 84 S.Ct. 1774, Mr. Justice White, however, regarded the Minnesota situation as "unclear", footnote 9, pp. 378–379 and p. 397 of 378 U.S., 84 S.Ct. 1774. Subsequent to our decision in Mitchell v. Stephens, supra, the Minnesota court unanimously held that Jackson v. Denno was not to be applied retrospectively. State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N.W.2d 3, 10–11 (1965). That court now, however, recognizing the impact of Jackson's basic holding, has stated that the procedure of State v. Schabert, supra, "must be revised" and has aligned itself with the courts of those states applying the so-called orthodox rule, that is, the trial judge alone, and with finality, is to rule on voluntariness and, if he determines that a confession was voluntarily made, it is to be admitted and the jury's consideration is to be limited to weight and credibility. State v. Keiser, Minn., 143 N.W.2d 75, 78 (1966).

With the Supreme Court's decision in Johnson v. State of New Jersey, supra, the retrospective character of Jackson v. Denno now seems clearly established. The Court there, as we have noted, was primarily concerned with the question of retrospective application of Escobedo and Miranda. It cited Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and Jackson v. Denno, however, as examples where the Court had "given retroactive effect to other constitutional rules of criminal procedure laid down in recent years". It also said, "We gave retroactive effect to Jackson v. Denno, supra, because confessions are likely to be highly persuasive with a jury, and if coerced they may well be untrustworthy

by their very nature". Despite the intervening contrary holding by the Supreme Court of Minnesota in State ex rel. Rasmussen v. Tahash, supra, we therefore reaffirm our conclusion expressed in Mitchell v. Stephens, supra, that Jackson v. Denno is indeed not limited to prospective operation.

■ The federal district court here concluded that, because it had made its own determination of the voluntariness of Holscher's statements, the requirements of Jackson v. Denno had been fulfilled. One may well argue that when a federal court conducts a full evidentiary hearing and reaches a conclusion as to a federal constitutional issue, this should be sufficiently determinative of that issue on a post-conviction attack. Nevertheless, adopting an attitude of over- rather than under-caution, we are inclined to read Jackson v. Denno otherwise. The Court there said, pp. 393–394 of 378 U.S., p. 1789 of 84 S.Ct.:

"However, we think that the further proceedings to which Jackson is entitled should occur initially in the state courts rather than in the federal habeas corpus court. * * * [H]e is entitled to a determination of the voluntariness of his confession in the state courts in accordance with valid state procedures. * * * It is New York, therefore, not the federal habeas corpus court, which should first provide Jackson with that which he has not yet had and to which he is constitutionally entitled—an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession."

That case, accordingly, was remanded to the federal district court to allow New York a reasonable time to afford Jackson a hearing or a new trial. Like action was taken in Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964). This court directed the same procedure in Mitchell v. Stephens, supra, p. 147 of 353 F.2d, even though the federal habeas corpus court there itself had already found that the confession was voluntarily and freely given. See p. 136 of 353 F.2d and p. 500 of 232 F.Supp.

We therefore conclude that, absent waiver, Holscher is entitled to have the question of the voluntariness of his statements determined by the state court rather than by the federal court, and in accord with valid state procedures.

■■ We are not inclined, however, to dispose of the Jackson v. Denno aspect of this case on any theory of waiver. Here, too, the state would have a heavy burden to meet the standard of "an intentional relinquishment or abandonment of a known right or privilege". Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The record is clear that the issue of voluntariness went to the jury in Holscher's state trial. Although trial counsel may not have objected to the statements' introduction, a like fact did not change the result in Jackson v. Denno. See p. 374 of 378 U.S., 84 S.Ct. 1774. As with the "mild doubt" situation present in Mitchell v. Stephens, supra, p. 145 of 353 F.2d, we vacate the judgment of the district court and remand the case, with directions to grant the State of Minnesota a reasonable time to afford Holscher an appropriate hearing in the state court on the issue of voluntariness of his statements or, in the alternative, a new trial.