**Melvin William HOMAN, Petitioner,**

**v.**

**Maurice SIGLER, Warden, Respondent.**

**Civ. 1197 L.**

United States District Court
D. Nebraska.

Oct. 31, 1967.

Richard L. Schmeling, Lincoln, Neb., for petitioner.

C. C. Sheldon, Asst. Atty. Gen., of Nebraska, Lincoln, Neb., for respondent.

## MEMORANDUM and ORDER

VAN PELT, District Judge.

The petitioner in this case, Melvin W. Homan, is seeking release from the Nebraska Penal and Correctional Complex where he is serving a seven year sentence resulting from a conviction of the crime of shooting with intent to kill, wound or maim.

Petitioner had apparently had a daily ingestion of alcoholic beverages in large quantities for a period of about two weeks immediately preceding the incident which caused his arrest. On the day in question, April 5, 1965, petitioner had been drinking heavily from 6:00 in the morning until about the time the incident occurred, which was 6:00 in the evening. Petitioner had come home for supper and while there took a pistol from a drawer in the dining room. Petitioner's wife, seeing him with the gun, became frightened and started to run from the house with two of their children. The gun then discharged, the bullet lodging high in the wall of the room, near the ceiling, injuring no one. It is for this shooting that he was convicted. Petitioner then went outside the house, his wife having already gone into a neighbor's house, and the gun discharged again while he was being apprehended by police officers. He was not prosecuted for shooting at the police officers. The court uses the verb "discharged" herein so as to not express any opinion on defendant's guilt.

Petitioner was then taken to the police station. On route he was questioned by the officers but refused to answer. Upon arriving at the police station, petitioner was booked and placed in a cell. No more questioning was done that evening.

About 8:00 the next morning, April 6, 1965, petitioner was taken from his cell and questioned for a period of time, which appears to be less than one hour, by two Omaha police officers. During the course of this interrogation petitioner made several incriminating statements which were subsequently used against him at his trial.

Petitioner claims that he was not warned of his constitutional rights at any time prior to making the incriminating statements. One of the interrogating officers, Delbert Bigley, testified both at the original trial of petitioner's case and at the hearing in this court, that he could not remember if he had warned petitioner of his constitutional rights prior to questioning him. During the hearing in this court he testified that it was quite possible that he did not do so. The other interrogating officer did not testify in either case.

Immediately after the interrogation, he asked another officer if he could use the telephone. This request was refused. He was then taken down to the Municipal Court of the City of Omaha to enter a plea. This was done at 9:00 in the morning of April 6, 1965. Petitioner plead not guilty and was ordered held without bond. He again requested to use the telephone and was again refused. Petitioner was then taken to the Douglas County jail. There, also, repeated requests to use the phone were made and turned down. It appears that petitioner was held at least five days before he was able to talk to anyone but other prisoners and law enforcement officials, although the exact length of time is not clear. During this period of time petitioner's mother was also trying to contact him but was not allowed to do so.

Petitioner then secured counsel and was tried in June of 1965, found guilty by the jury of the crime charged, and sentenced by the judge.

Petitioner testified at the hearing had in this court that he was suffering from a very severe "hangover" the morning

of April 6, 1965 when he was questioned by the police and made the incriminating statements; that he felt sick and just wanted to get back to bed. The officer also testified in this court that from what was said, he was aware that petitioner was suffering from a hangover at the time he questioned him.

Under the rule in State v. Sheldon, 181 Neb. 360, 148 N.W.2d 301 (1967), petitioner has exhausted his state remedies on the issues presented to this court.

Petitioner makes the following claimed violations of his constitutional rights:

a) The failure of interrogating police officers to warn petitioner of his right to remain silent and that any statement he made could be used against him.

b) The failure of interrogating police officers to warn petitioner that he had a right to be represented by counsel while being interrogated.

c) Deprivation of counsel caused by the refusal of police officers and jailers to let him use the telephone.

d) Denial of due process of law in that the trial judge failed to make an independent determination as to the admissibility of petitioner's statements made while he was being interrogated before such statements were placed into evidence before the jury.

### I.

Turning first to the claim raised by petitioner that his rights were violated by the refusal of the police officers and jailers to let him use the telephone, this court can find no basis on which the relief requested by petitioner can be granted him.

From the evidence, it appears that the only incriminating statement which petitioner made or at least which was used against him at the trial was the one elicited on the morning of April 6, 1965. This statement was made before petitioner made his first request to use the telephone. Thus any constitutional violations made subsequent to that time cannot affect the validity of that statement.

Thus, since a constitutional violation does not affect what happened prior to the violation, there is no indication that this violation even if it did occur, had any likelihood of prejudicing petitioner at trial. The subject of violations of constitutional rights without a resulting likelihood of prejudice was more thoroughly discussed by this court in its memorandum opinion in Sheldon v. State of Nebraska, Civ. 1196 L, filed on October 23, 1967.

For these reasons, this court feels that any claimed violation of right to counsel which occurred after the incriminating statements were made on the morning of April 6, 1965 cannot serve as a basis for the issuance of a writ of habeas corpus.

### II.

Petitioner raises additional claims of violation of his constitutional rights. These claims center around the testimony of a police officer as to admissions made by the petitioner during interrogation. If these admissions were involuntary and improperly admitted, the writ must issue. Rogers v. Richmond, 365 U.S. 534, 540, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); Miranda v. State of Arizona, 384 U.S. 436, 476, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

However, before the merits of petitioner's claim of the involuntariness of his admissions can be considered, there is a serious procedural question which must be considered.

Neither petitioner nor his counsel made any objection to the testimony concerning petitioner's oral admissions, on the basis that it was involuntary or coerced, at the time the testimony was offered. This claim was first raised on the motion for new trial. On appeal, the Nebraska Supreme Court first considered the merits of petitioner's contention and ruled against him on the basis that there was no affirmative evidence on the record which indicated that petitioner had not been advised of his rights, and then

held that, in any event, petitioner had not objected to the admission of the evidence and could not raise the issue subsequent to the trial. State v. Homan, 180 Neb. 7, 141 N.W.2d 30 (1966). The question is thus presented whether that procedural default precludes the petitioner from raising the issue of claimed violations of constitutional rights in a federal habeas corpus proceeding.

In Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the Court was directly faced with the question of whether a procedural default would prevent an habeas corpus court from considering a constitutional claim. In that case, the petitioner had failed to appeal his state court conviction. The Court said, at pp. 438 and 439, 83 S.Ct. at pp. 848 and 849:

> "Although we hold that the jurisdiction of the federal courts on habeas corpus is not affected by procedural defaults incurred by the applicant during the state court proceedings, we recognize a limited discretion in the federal judge to deny relief to an applicant under certain circumstances. * * But we wish to make very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits— though of course only after the federal court has satisfied itself, by holding a hearing or by some other means of the

facts bearing upon the applicant's default. * * * At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. * * * A choice made by counsel not participated in by the petitioner does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas for waiver affecting federal rights is a federal question."

In Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), the Court was considering a case on certiorari which involved a question of failure to make a timely objection to the admission of evidence. The Court there said at p. 452, 85 S.Ct. at p. 570:

> "We think a similar course is particularly desirable here, since a dismissal on the basis of an adequate state ground would not end this case; petitioner might still pursue vindication of his federal claim in a federal habeas corpus proceeding in which the procedural default will not alone preclude consideration of his claim, at least unless it is shown that petitioner deliberately by-passed the orderly procedure of the state courts. Fay v. Noia * * *."

See also, Mitchell v. Stephens, 353 F.2d 129 (8th Cir. 1965) and State of Minnesota ex rel. Holscher v. Tahash, 364 F.2d 922 (8th Cir. 1966).

■■ It becomes apparent then that unless petitioner deliberately and knowingly by-passed the orderly state procedures in this case, his failure to make timely objection will not bar a consideration of his claims by this court. And the determination of whether he did in fact by-pass state procedures is one to be made by this court independent of any determination made by the state court on the question.

The question which this court must decide is indeed a difficult one for the reason that there is an almost total lack of evidence on the issue in the record

presented. The only facts bearing upon the question of deliberate by-pass is that petitioner did not make a contemporaneous objection to the admission of the statements into evidence, and that petitioner did raise the issue in his motion for new trial and all subsequent proceedings.

Because of the paucity of evidence on this issue, it becomes important to consider who had the burden of proof on this issue. Henry v. State of Mississippi, supra, was a case in which the waiver of violations of constitutional rights was considered. In that case, 379 U.S. at p. 452, 85 S.Ct. 564, 570, the Court said: "Only evidence extrinsic to the record before us can establish the fact of waiver [by procedural default], *and the State should have an opportunity to establish that fact.*" (Emphasis added.) In State of Minnesota ex rel. Holscher v. Tahash, supra, the Court of Appeals for this Circuit said at p. 927:

> "We are not inclined, however, to dispose of the Jackson v. Denno aspect of this case on any theory of waiver. Here, too, the state would have a heavy burden to meet the standard of 'an intentional relinquishment or abandonment of a known right or privilege.' Johnson v. Zerbst, 304 U.S. 458, .464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The record is clear that the issue of voluntariness went to the jury in Holscher's state trial. Although trial counsel may not have objected to the statements' introduction, a like fact did not change the result in Jackson v. Denno."

Similar holdings are found in the analogous area of waiver of constitutional rights. In Carnley v. Cochran, 369 U. S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), the Court said: "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." (Id. at p. 516, 82 S.Ct. at p. 890). See also, Miranda v. State of Arizona, 384 U.S. 436 at p. 475, 86 S.Ct. 1602, 16 L.Ed. 2d 694.

■ It appears then that the burden is upon the State to prove that petitioner waived any violation of his constitutional rights by a deliberate by-pass of the orderly state procedures. This conclusion is fortified by the realization that an habeas corpus action is a civil action. As such, the question of waiver is in the nature of an affirmative defense which must be plead and proved by the defendant-respondent.

■ This being the case, the respondent has not sustained his burden and has not shown that the petitioner deliberately by-passed the state procedures. This court cannot presume, from the mere showing that neither petitioner nor his counsel made a contemporaneous objection to the challenged testimony, that petitioner has knowingly, intelligently and deliberately waived his constitutional rights. The cases of State of Minnesota ex rel. Holscher v. Tahash, supra, and Mitchell v. Stephens, supra, also compel this result. The *Mitchell* case in particular reached this result on a much stronger fact situation than what is presented here. In that case, not only did defense counsel fail to object to the admission of the confession on the basis that it was involuntary, but when the judge raised this issue, he specifically stated that they were not contending that the confession was involuntary. The claim that it was involuntary was first raised in a post-conviction proceeding. The Court of Appeals for this Circuit held that the petitioner in that case had not waived his constitutional rights.

Petitioner's failure to object to the admission of the evidence concerning his oral admissions does not bar, on the record before us, a consideration of his claims in this court.

### III.

Petitioner claims that he was denied due process because the trial judge failed to make an independent determination as to the admissibility of petitioner's statements before they were received in

evidence. A reading of the transcript in this case does not show that the trial judge made an independent determination on the question of voluntariness before submitting the statements to the jury. Respondent has not contended in this court that such a determination was made. It appears, however, by instruction number 11 that the trial judge did submit the issue of voluntariness to the jury.

■ The case of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), supports petitioner's claim in this regard. In that case, the Court held that a defendant is entitled to an evidentiary hearing out of the presence of the jury to determine whether the confession is voluntary. The facts and rationale of that case compel the same result in this case.

However, this court is not obligated to decide at this time whether the statements are voluntary or involuntary. In Jackson v. Denno, supra, the Court said:

"However, we think that the further proceedings to which Jackson is entitled should occur initially in the state courts rather than in the federal habeas corpus court. * * * It is New York, therefore, not the federal habeas corpus court, which should first provide Jackson with that which he has not yet had and to which he is constitutionally entitled—an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession." Id. at p. 393–394, 84 S.Ct. at p. 1789–1790.

See also, Boles v. Stevenson, 379 U.S. 43 (1964).

This same conclusion is indicated by the Court of Appeals for this Circuit. Mitchell v. Stephens, supra; State of Minnesota ex rel. Holscher v. Tahash, supra. In the latter case, the court said:

"The federal district court here concluded that, because it had made its own determination of the voluntariness of Holscher's statements, the requirements of Jackson v. Denno had been fulfilled. One may well argue that

when a federal court conducts a full evidentiary hearing and reaches a conclusion as to a federal constitutional issue, this should be sufficiently determinative of that issue on a post-conviction attack. Nevertheless, adopting an attitude of over- rather than under-caution, we are inclined to read Jackson v. Denno otherwise." 364 F.2d at 927.

■ This case is a close one in this regard. There seems ample authority that where the facts are admitted or undisputed, the court can and should dispose of the question of voluntariness by an application of the proper case authority. However, out of "an attitude of over- rather than under-caution", this court will defer any further decision in this case until the state court has had an opportunity to give petitioner a full, fair, adequate hearing and make findings of fact and enters its conclusions of law.

Of course, as was pointed out in Jackson v. Denno, supra, if the state court finds that the admissions were voluntarily made, and that finding is upheld, petitioner would not be entitled to a new trial, as there would have been no error in admitting the statements into evidence. A finding of involuntariness, however, would necessitate petitioner's release or a new trial. The State could also, if it wishes, grant petitioner a new trial without holding the collateral voluntariness hearing.

The court has avoided discussion of or passing upon petitioner's claim that he was not warned of his right to remain silent and of his other constitutional rights. This is intentional. It may affect the voluntariness of his confession and is a matter that in the first instance should be passed on expressly by the state courts.

Therefore, it is ordered that petitioner, Melvin W. Homan, be released from his present confinement in the Nebraska Penal and Correctional Complex at the end of ninety days from the date hereof unless within that time he has been afforded an appropriate hearing in the

state court on the issue of the voluntariness of his oral statements, and the effect of the warnings, if any, given him, or lack thereof, or in the alternative, a new trial.